The last case of the day, which is the State of California v. the Federal Energy Regulatory Commissioner. Counsel ready? Good morning. Good morning. May it please the Court, my name is Paul Stein, representing the Petitioner, State of California. I'm going to reserve about three minutes of my time for rebuttal, if that's all right. FERC, the Federal Energy Regulatory Commission, is blocking billions of dollars in legitimate refund claims rising out of the California energy crisis based on a fundamentally flawed assumption. The assumption that rates were filed as required by Section 205 of the Federal Power Act. Rates were not filed. We know that because the statute makes that clear and because two Supreme Court cases, the MCI and Maeslin cases, make that clear. Rates were not filed in advance of their taking effect so they could be reviewed for reasonableness and they weren't reported for the more limited purpose of market monitoring either. These statutory violations occurred during the most disastrous run-up in wholesale power prices in history and the violations are ongoing. Section 205 states plainly that utilities must file schedules showing all rates. FERC maintains that rates were filed because generators and marketers filed tariffs stating that rates would be determined by agreement. That distinction is artificial at best. There's no difference between filing no tariff and filing a tariff stating that rates will be determined by agreement or by negotiation. The D.C. Circuit in the regular common carrier conference case made that point explicitly. Justice Scalia authored the opinion and he held that a tariff which states only that the utility is willing to negotiate with the buyer is not a valid filed rate. In particular, those kinds of tariffs give the utility unfettered pricing discretion which is precisely what the Interstate Commerce Act and the Federal Power Act were designed to prevent. By eliminating the filing requirement under Section 205, FERC is doing precisely what the Supreme Court said the ICC, the Interstate Commerce Commission, and the FCC, the Federal Communications Commission, had no authority to do. Just like the FCC, FERC decided that requiring the filing of all rates would hinder the development of competitive markets. FERC also, like the FCC, decided that requiring them to file their rates was unnecessary because competitive market forces would keep rates in check. In fact, FERC contends in this case that requiring them to file their rates really wouldn't help the agency determine if a utility had the ability to exercise market power. So it simply doesn't require them to file their rates. Well, the existence of competition is not a sufficient justification for eliminating the filing requirement. That's precisely what the Supreme Court held in the MCI and Maislin cases. There's one point about it. If we pursued your theory, wouldn't we in effect be saying you can't have market-based rates? Well, I don't know if that's true, and the issue was actually never litigated at FERC. We haven't argued that the statute prohibits market-based rates. But if you're going to require filing of the actual numbers to satisfy the statutory requirement for filing, how can you possibly have market-based rates? You'd have to be filing what the market-based rate's going to be in 60 days. Well, that may be true. I think the answer is that it's FERC's job to work out its markets in a way that the filing requirement can be complied with. Well, I take that answer to be an acknowledgment of the concern I just expressed. To tell me that it's FERC's job doesn't tell me that there's any way to have a market-based system consistent with your theory. Well, I think the first answer actually to that question is that's precisely what MCI and the rest of the long-distance industry argued in the MCI case. They said, how are we going to have a competitive market here if we have to file all rates in advance? And the Supreme Court said that may be true, but that doesn't excuse the FCC ignoring the statute. If FERC thinks that the filing requirement is a hindrance to the development of competitive markets, or it thinks it's outmoded or an anachronism, its obligation is to go to Congress and get the statute changed. Well, FERC thinks that the statute doesn't preclude market-based rates because they think the submission of the market-based rate permission tariff is sufficient. And you challenged that, so I'm trying to figure out the implications of your position seem to be that you can't have a market-based rate system. Well, I don't think that's necessarily true. I think there are ways that FERC could rely on markets, perhaps not the way markets are currently structured, perhaps not the way these spot markets where sales of power last as few as 10 minutes. Those kinds of markets may not be feasible under the filing requirement. I don't know. Really that's, like I said, I think that's FERC's job. Well, the state of California kind of plunged into this on its own, too. I mean, jumped into a market-based rate system voluntarily with the acts of the legislature. So presumably the state of California has given some thought to whether this system is legal and consistent. Well, the state of California wanted competition to drive down the price of electricity. The state of California didn't ask for a system that violates federal law. And in the end, it's FERC's job to enforce the statute. Regardless of what the state of California or the AG may have said in any of those prior proceedings at FERC, the bottom line is the system as it's currently formulated violates the statute. If you extended the FERC enforcement power to beyond the filed rate period under Section 205, wouldn't that satisfy your concern without disturbing a market rate tariff system? To the filed rate period under Section 205? In other words, the limitations. If we said, thinking about the Washington Water Power case and Delmarva and those kind of cases, which FERC has fairly broadly construed its own enforcement powers. Now, they aren't strictly analogous to this case. But if we construed FERC's ability to order rebates beyond the period it issued, wouldn't that satisfy your concern in terms of how the market rate system is being administered? Well, in your first point about the Washington Water Power case, I think FERC does have discretion to order refunds for the violations of the quarterly reporting requirements that we've identified. And I think that if FERC were able to order refunds, retroactive refunds, where market-based rates were being charged, that would certainly give consumers more protection than they have now. But I don't think it would in that the statute still requires the filing of all rates. The language is clear and definite. And that's what the court held in the Southwestern Bell case. It means a list of discernible prices. So just to get back to Judge Clifton's point, though, that at the end of the bottom line of your analysis is that market rate tariffs are per se illegal under the Federal Power Act, right? Well, wholesale power is bought and sold in a lot of different ways. For example, buyers and sellers enter into long-term contracts that can last 5, 10, or more years. I don't see any reason why those contracts could not be filed under Section 205 in advance of their taking effect. Whether or not there is no way to operate a spot market like the ISO or the PX and comply with the filing requirement, I really don't know. It could be that given the state of computer technology today, that rates could be filed at the time they're determined, giving consumers an opportunity to protest and giving the agency an opportunity to suspend the rate and hold a hearing. I really don't know, and I think that's FERC's job to figure out. If it can't run these markets in compliance with the statute, it needs to get the statute amended. That's precisely what the Supreme Court held in the MCI case. Really this case is all about applying the same principles laid down in MCI and Maislin to FERC regulation under the Federal Power Act. Both the Communications Act and the Federal Power Act were modeled on the Interstate Commerce Act. Three statutes are nearly identical with respect to the filing requirements. And it's also worth keeping in mind that when AT&T brought its challenge to the FCC's de-tariffing rule, the de-tariffing rule had been in effect for more than a decade. The Supreme Court said it may be true that a competitive market is not going to work as effectively, but the fact remains that rates have to be filed. The FCC eventually went to Congress and got the statutory authority it needed. FERC has not done that. As I was mentioning, one of the key parts of the MCI case, the Court held that without rates filed in tariffs, consumers would have no means of challenging proposed rate changes under Section 204 of the Communications Act. That section is basically identical to Section 205E of the Federal Power Act. They both allow FERC, the agency, to suspend rates or make them effective subject to refund. But under FERC's market-based filing regime, no rates can be challenged under Section 205E. FERC has essentially abdicated its authority to order refunds in the event that rates turn out to be unjust and unreasonable. The statute was designed to protect consumers, and FERC's abdication of its authority to order refunds simply cannot be squared with the fundamental purpose of the statute. Now, FERC does require reporting of rates on an after-the-fact basis in quarterly reports. But those reports are not Section 205 filings. They exist for the limited purpose of facilitating the filing of complaints after rates have gone into effect. Now, a complaint after a rate has gone into effect is a very different animal than a protest to a proposed rate under Section 205. When a consumer challenges an existing rate under Section 206, the refund remedy that's available is prospective only. No refunds are available until 60 days after the filing of the complaint. Now, in California, the result of that 60-day lag was a reduction in the amount of refunds available to consumers by several billion dollars. And in these markets more generally, the result of this 60-day lag is that no single transaction can ever be challenged under Section 206 because the rates expire long before a complaint could ever be put on file. FERC's reliance on Section 206 also shifts the burden of proof. Under Section 205, the utility bears the burden of proving that its rates are just and reasonable. Under Section 206, consumers bear that burden. Now, the statute was designed to protect consumers. Shifting the burden in that manner, as FERC's system does, is simply not consistent with Congress's intention of protecting consumers from exercises of market power. FERC places a lot of emphasis on its discretion to use different rate-making methodologies. But that issue, frankly, is not before the Court. It's a red herring. The Attorney General has never argued that FERC is limited to using cost-of-service rate-making or to any other particular type of rate-making methodology. The Attorney General is merely saying that FERC has to file all rates. That's precisely what the Supreme Court said in the MCI case. The Supreme Court said competition may well be the best way of protecting consumers. It may well be that consumers are adequately protected so long as the agency could intervene after the fact. But the bottom line is Congress established a system in which all rates had to be filed and the statute has to be followed. In particular, the Court said that rate filings were Congress's chosen means of ensuring just and reasonable rates. The agency is not free to ignore that prescription because it thinks rate filings are obsolete. With respect to FERC's interpretation of the statute here, there's no deference warranted to their interpretation of Section 205 here under the Chevron Doctrine for several reasons. Most importantly, the statute is unambiguous. It states utilities have to file a schedule showing all rates. In the Southwestern Bell case and the regular Common Carrier Conference case, the Court said that means file a price or a formula which fixes the price or at least allows consumers to determine how the rate will be determined. There is nothing in a market-based tariff that limits the utility's pricing discretion. They're essentially a blank check to charge any rate the market will bear, no matter how high or no matter how grossly excessive, unless and until FERC changes the grant of authority or revokes the grant of authority under Section 206. Secondly, FERC's authority to tailor the filing requirements to a market-based rate environment is quite limited. The Supreme Court said that explicitly in the MCI case. The rate filing requirement is the essential characteristic of a rate-regulated industry, which is what the Court said. And because it's so central to the scheme, the agency has very little discretion to modify those requirements. And in fact, FERC has less authority than the FCC did. The FCC had an explicit grant of authority to modify the filing requirement. The ICC had a grant of authority to change the filing requirements. FERC has no similar grant of authority under Section 205. And third, summing up here, FERC has not cited a single case holding that its filing requirements for market-based rates comply with the Federal Power Act. There is not a single case on point. On the other hand, we've cited a long line of cases under the Federal Power Act, in particular the Electrical District No. 1 case, under the Interstate Commerce Act, and the Federal Communications Act. All of those cases make clear that rates have to be filed and that a tariff, merely because it says tariff on the top of the piece of paper, is not a tariff showing all rates. Did you want to save some time for rebuttal? Yes, thank you, Your Honor. You have about three and a half minutes. Thank you for your argument. Counsel? Good morning, Your Honors. My name is Beth Pasella, and I'm representing FERC this morning. And with me is Howard Shapiro, and he's hoping to have five minutes of my time for argument for the interveners. It's up to you. I think we need to start at the beginning here with what FERC has found, what the statute says. The statute plainly says that FERC has discretion to decide the timing and form of the filing of rates. And, of course, FERC knows that rates must be filed. Schedules must be filed, is what the statute specifically says. And the statute gives FERC the discretion to decide the form and the timing of those. And that's what FERC has done here. What FERC has decided in exercising its discretion under the statute is that a tariff, which states that it first will, if an entity shows that it does not have market power or has adequately mitigated market power, FERC will approve its request in a tariff for market-based rate authority. And if FERC is mistaken in that belief and it discovers that later, under your theory, I guess there are certain periods of time for which rebates would not be available. Sure, absolutely, Your Honor. So, in other words, there are, under your interpretation of the Act, even though the rates may be unjust and discriminatory and prohibited by the Federal Power Act the way you've constructed it, there is no effective remedy. Is that true? That's right, Your Honor. And that's exactly how the statute is written for any type of rate. Of course, remember, the statute doesn't specify what type of rate system FERC is using. That doesn't really suggest a problem. The statute is structured for a kind of rate other than a market-based rate. No, I don't think that's it, Your Honor. Is there any logic in having that 60-day lag, which is inherent in the existing statute, if you have a market-based rate system? What I wanted to point out first before, and I do want to answer that question, but if I could just use that exact statement to point out why I think the statute absolutely acknowledges that there will be periods of time where there will be rates that are no longer just and reasonable and that there will not be refunds for that. And that 60-day time lag after a complaint in order for the refund effective date to take effect absolutely shows that the statute knows that there are going to be times where rates are going to not. That makes sense with a fixed rate, a filed rate that everyone knows about. But I guess getting back to Judge Clifton's question, what about a market-based rate? I think it's exactly the same. That's what I'm saying, Your Honor, because someone will file a complaint, and if we believe that rates are no longer just and reasonable for that party, we can act to stop their market-based rate authority, and we will act to stop their market-based rate authority if we find that they do have market power and that, therefore, their rates will no longer be presumed to be just and reasonable. Has FERC ever done that? Excuse me, Your Honor? Has FERC ever done that? We have recently acted to take away Enron's market-based rate authority, Your Honor. Did that happen? That's recent. I want to say it was in the past few months. 2003? I believe it is. I believe it is. It is certainly recent. There's no question about that. But it's also important for this Court, I think, to recognize that courts have affirmed our market-based rate system as satisfying the just and reasonable requirements of the statute. So all that's left here is whether it satisfies the filed rate doctrine. Petitioners' own hearing request explicitly stated that they were not challenging anything that had already been addressed by a federal court, and so nothing is before this Court concerning the justness and reasonableness of our market-based rate program, only whether it satisfies the filed rate doctrine. And Petitioner keeps acting as if FERC thinks that it's the tariff in and of itself that satisfies the filed rate doctrine. Nothing in our case law has ever indicated that that's true. Quite the contrary. What FERC has decided is that the filed rate doctrine is satisfied by the filing of the tariff, which shows that market rates will be charged, and so then people will know the consequences of their actions in purchasing from that seller with market-based rate authority. How can one effectively challenge that, though? And that's the point that the stake makes. If you really don't know what the rate is, how can a challenge be made that it's discriminatory if you don't know the rate, that it's unjust and not based on all the factors that go into that determination until you know the rate? And then if you get the rate, the challenge is made, then you're time-limited in terms of rebate. Well, Your Honor, as I said ---- And I guess your answer is just that's tough. No, no. I don't think at all that my answer is that that's tough. The justness and reasonableness of the rate has already been predetermined by FERC before the sale is made. FERC has determined that because that entity does not have market power, the rates it charges will be just and reasonable. They only can charge just and reasonable. FERC has also determined that sometimes that doesn't work, and sometimes there have been produced rates that are not just and reasonable, but it's hard for us to figure out what remedy is available. The remedy that's available for that, Your Honor, is that market-based rates won't be charged in the future. And if it is a longer-term ---- That's not a remedy. That doesn't compensate the victim. That says we're going to try to keep the crime from happening again, but that doesn't do anything for the guy who's been run over for the first time. But that's exactly the same thing, Your Honor. If you have a cost-based rate contract or a formula-based rate contract that is no longer just and reasonable, it was just and reasonable when it was entered into, but is no longer just and reasonable, and a complaint is filed on date X and you cannot give any refunds for anything prior to date X plus 60. And that's how the statute is written. How do you view your authority? And, again, I probably gave you an indication of what my thinking was or my question was in asking about Washington Water Power and its progeny. I gather that you think you have authority to order some either refunds or take some other action outside of the statutory scheme under certain circumstances. Is that right? In other words, your argument or your construction is premised on that you're limited to the 60 days. Now, Washington Water Power and Delmarva seem to indicate otherwise. If someone violates their tariff or a rule in the tariff, we can ‑‑ that would be a tariff violation and then we're not restricted to the refund issue. And there are other things in tariffs. I mean, the tariff, of course, yes, does stay as one of its provisions that market-based rates will be charged, and that is what will be agreed to by the buyer and the seller. But it's not a one-sentence tariff. There are other provisions in the tariff that, if are violated, we can remedy. And that's going on right now in the PA docket. I believe it's PA‑‑ I apologize. But it is mentioned in our brief, and it is part of this case, that we are investigating now whether there were illegal actions taken by the sellers. We will act to not order refunds but to disgorge profits. Of course, we're also acting to order refunds in the EOO-95 case. This disgorgement, that's not limited to the, what is it, October 1st? Not at all, Your Honor. So you could, in theory, accomplish some of the relief the state would otherwise seek by way of this disgorgement. We're absolutely doing that right now. There are a number of investigations going on, and the commission is looking at whether it will disgorge profits that were illegally gained. As they also are getting refunds in the EOO-95 proceedings. And I gather that you think that illegally gained does not translate into unjust and discriminatory. I did also want to mention on the discriminatory part, yes. The discriminatory part, because the rate is filed in this case completely unlike in MCI and Maislin, in which the specific rate charged was never, ever filed with the commissions there. The specific rate does have to be filed with our commission. And so the public is fully aware of what has been charged, and each and every member of the public, including the buyers, can say, wow, that person got a completely different rate than me on the same exact day. Why did that happen? What is going on here? It's unduly discriminatory. And I gather your position is still that the filing of the reports is a compliance issue and not part of the rate. No, no, Your Honor. Absolutely FERC thinks it is part of the rate. The reason FERC is talking about it as a compliance issue is because we, again, have authority to say when the filing can occur, and we're just fixing it. We required everyone to go back and specifically file their rates, and they have done that. So that's why it's a compliance issue, not that it's not part of the 205. Absolutely the quarterly reports are 205C filings. Petitioner wants to argue that they're 205D filings, new filings in this case, and would then require a new just and reasonable review. FERC, they're not. They're the second part of the 205C filing that FERC knows and has always said is mandated. Have they been filed? Yes, they have, Your Honor. We're down to five and a half minutes. If you had any questions on the remedies other than on the remedy matter. I mean, I just want to point out our discretion is so broad concerning remedies, and FERC did act to remedy the violation here, and the violation was not complying with our filing requirements and ordered filings to occur. They have occurred, and the refund issue will be addressed and is being addressed in the ELOO-95. But it is so limited that basically you're allowing billions of dollars of overcharging to occur, right? Well, Your Honor, there's been no proof of overcharging here. If you believe the pleadings at this point. They haven't even begun to try to make that claim. In this case, don't forget, Your Honor, what this case is about. This case is about whether the quarterly reports were properly filed. Thank you. Thank you. Mr. Shapiro. Please, the Court. California Restructured. Who's your client? I represent the wholesale power supplier intervenors, Your Honor. There is also a group of aligned generator intervenors. Our positions are generally parallel. I speak only for the wholesale power intervenors. Do you represent a trade association? No, it is the individual wholesale power suppliers filed a collective brief as intervenors. And it was agreed between the aligned generators who also filed a separate collective brief that one group would speak. Go ahead. California restructured its entire markets on the basis of FERC's market-based rate system. It told its IOUs to sell off their generation and rely on the California independent system operator, ISO, and California PX auction markets. It now complains that because it got what it asked for, it is being unfairly treated. The AG asks, the AG recognizes that the ISO and PX markets are based on sellers' market-based rate tariffs on file at FERC. And he concedes that in his reply brief. He concedes that he doesn't attack market-based rates generally. In his complaint before the commission, he said expressly at, I think it was page, at ER 13, that there is no objection to market-based rates if there's a cap. Now, you have to look at that through the eyes of Section 205C in the statute. Section 205C sets out a filing requirement. The AG recognizes that formula rates are appropriate. Formula rates do not set out any specific numbers. They set out a methodology. Formula rates in that sense are analogous to market-based rates, although market-based rates are not formula rates. The difference is that a formula rate is a subset of a cost-based rate, which is built on the presumption that the utility has monopoly power. The market-based rate rests on a prior determination by FERC at the time the market-based rate tariff is proposed that the seller does not have market power. Right, but there's a significant difference in the real-world impact in terms of remedies, it seems to me. I mean, the filed rates, you know, you've been through, I'm sure, hundreds of these, but you refund actions in front of FERC. They're hundreds and hundreds, maybe thousands of years, and they're easy to determine because they're for a finite period, and they go through. But with a market-based system, you really don't have the same sort of remedy. The remedies seem to me to be sharply curtailed if you construe it as FERC has. And whether that's what the statute commands or not is another question, but I think that's the real-world impact, isn't it? Let me turn to that in both the statutory terms and the real terms, the real-world terms. We have two parts of the statute, Section 205, which deals with the filing requirement and the availability of some type of prefiling review. That is satisfied when FERC determines that the seller lacks market power and allows the filing of the market-based rate tariff in conjunction with the requirement for the filing of the quarterly reports. That's the 205C requirement. And is that What are those reports to contain? Those reports contain the details of who sold to, I mean, who bought, at what price, and other details. They are supposed to be transaction-specific. The violation FERC found here was that the reports were not transaction-specific. They had been aggregated. But FERC, in examining that problem very carefully, looked at the situation and determined that refunds for violation of the quarterly reporting requirement weren't proper and went through the four factors. There was no showing that the violation resulted in unjust and unreasonable prices. It was consistent with prior precedent. They distinguished Washington Water Power because Washington Water Power was a case in which there had been a failure to post prices as required by FERC and a favoritism toward an affiliate, so it was quite an egregious violation. FERC found widespread confusion about the nature of the filings to be made, and perhaps most significantly, although each factor has its entitlement to its own weight, the AG, who has complained about these filed rates, waited two years to complain about quarterly reports, going back to January 2000. But he didn't file the complaint until March 19, 2002. Now, this was after FERC had clearly indicated that market-based rates were filed rates in its order of July 25, 2001, opening up a massive refund proceeding, which is actually in part before this court in the court's docket number 0171051. Proceedings in that docket had been suspended in order to give the California parties an opportunity to induce additional evidence before FERC, and that was in order of August 20, 2002. There are some 70 petitions for review in that particular docket. That is pending before FERC now. There has been an ALJ report, a decision by FERC, and a request for rehearing, and there is in the court's docket in that 0171051 a status report by FERC which was required by the court. You need to wrap up? Yes. Well, just very quickly then, 205 and 206. The 206 remedy is a remedy which applies when a rate ceases to be just and reasonable in the eyes of FERC or a complainant. It applies to market-based rates. It applies to quarterly rates. Right. It's prospective only, though, right? It's prospective in the sense that once the complaint is filed, 60 days after that, it is subject to refund. So all the sales in California since October 2000 have been subject to refund because that is the refund effective date under Section 206B. That is really the essential thing about the system. You do need to wrap up. You're almost two and a half minutes over the five minutes that FERC gave you. Can you wrap up? Yes, I can. I'll say only that the MCI case is not relevant here. That was a case of de-tariffing. Market-based rates are not de-tariffing, and that the Maislin case is not applicable at all because there, there was a filed rate and there were discounts privately negotiated from it, which was clearly not authorized by the statute. That is not the situation. Thank you, Your Honors. Thank you for your argument. Rebuttal? We'll give you four minutes. Put four minutes on the clock. Thank you. First off, I'd like to address the argument that FERC has tremendously broad discretion to determine the timing and form of rate filings. First of all, a market-based tariff is not just another form of a rate schedule that shows all rates. It's a rate schedule that shows no rates at all. By design, it shows no rates at all. Secondly, FERC's authority to determine the timing of rate filings applies to the quarterly reports. But as I mentioned before, quarterly reports are not filed under Section 205. They do not allow a consumer to come in and challenge the proposed rate, perhaps get the rate suspended or even made effective subject to refund. That fundamental remedy has been written out of the statute by FERC's reliance on after-the-fact quarterly reports. Presumably it would be available if somebody wanted to challenge the determination that there was no market power. Yes, that's true. The market-based tariff is filed in advance of its taking effect. The utility comes in, puts on a showing, demonstrating or purporting to demonstrate that it lacks market power. Theoretically, consumers have an opportunity to come in and argue that the utility does have market power. The problem with that is that's precisely the kind of analysis that the FCC engaged in. It looked at the long-distance market and it said there's a whole class of carriers here. We're going to call them non-dominant long-distance carriers. They don't have market power. Therefore, it's a matter of economic theory. The rates they charge will be just and reasonable. As a matter of economic logic, they cannot charge excessive rates because they'll lose business. They'll go out of business. Well, the Supreme Court said that may be true. Reliance on the competitive market may be the best way to protect consumers. We might be better off if there were no statute whatsoever regulating the communications market. The Supreme Court said Congress had not changed the filing requirement. Unless and until Congress changed the filing requirement, the FCC was stuck. It had to review the filing of all rates. FERC counsel made the point that the scheme works precisely the same where market-based rates are being charged as where a cost-based rate or a formula rate is being charged. That's simply not true. The most obvious reason is that when a cost-based rate is filed, a price is filed. A consumer can come in. He knows what the price is going to be and can challenge the reasonableness of that price. With respect to the court's question about revocation of market-based rate authority, Enron was the first entity. It's not as simple always as that, is it? I mean, you can have challenges basically to inclusion of stranded costs and that sort of thing. I mean, even with formula-based rates, the challenges can end up to be fairly sophisticated. It's not just that this particular rate is unjust. There could be a lot of components to it, so it's not always a simple matter, is it? Well, with a formula rate, and a formula rate, by the way, is not analogous to a market-based rate, and that's because a formula dictates the method by which the utility must calculate its rate. It limits the utility's discretion to charge anything it can get in the market. And to the extent the utility misapplies the formula or abuses its discretion under the formula, that becomes a violation of the tariff, and FERC has authority to go back in time and order refunds, essentially set the rate at the level it would have been had the formula been filed. A market-based tariff is a blank slate. There is no standard in a market-based tariff that limits the seller's pricing discretion. It's impossible to demonstrate a violation of a market-based tariff by arguing even, for example, that they charge $10 million a megawatt hour. Under FERC's theory, that would not be a violation of the market-based tariff. It might be a reason for revoking the seller's market-based rate tariff going forward, but that wouldn't help consumers who are stuck with a $10 million a megawatt hour charge. Is there any recitation in the market-based tariff that the rates are fair and reasonable? The tariff simply says that rates will be determined by agreement. That's all it says. I need to wrap up. Okay. I just want to make one last point about the discouragement of profits remedy that FERC's council mentioned a minute ago. That's not a rate refund. The remedy that Congress guaranteed consumers is a potential refund under Section 205 of the Federal Power Act. If you follow the proceedings at FERC that are going on right now, FERC trial staff have entered into several settlements with some of the companies doing business in California during the crisis. Those settlements, I think, total somewhere over a million dollars now. We're talking about billions of dollars in rate refunds that should be available here, billions. FERC is settling discouragement of profit claims for less than pennies on the dollar. If there were a filed rate in force in the ISO and PX markets, FERC could go back in time and make all sellers return anything they collected in excess of the filed rate. But that's not what FERC is doing here. It's going after individual market participants and discouraging any unjust profits they collected. It has nothing to do with the rate that was charged. Thank you for your argument. Your comments there are quite helpful. The case that's argued will be submitted for decision, and the Court will stand at recess for the day. All rise. This Court is at recess. Stand to be adjourned. 3-2.
judges: Hawkins, Thomas, Clifton